UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

AMY C.,[1]

Plaintiff,

DECISION AND ORDER

-vs-

1:24-CV-00553-UNA

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

## INTRODUCTION

On June 11, 2024, Amy C. ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of the United States Social Security Administration's ("Commissioner") denial of her application for Disability Insurance Benefits ("DIB"). ECF No. 1. Plaintiff moved for summary judgment pursuant to Federal Rule of Civil Procedure 56, and the Commissioner moved for judgment on the pleadings pursuant to Rule 12(c). ECF No. 5 (Plaintiff); ECF No. 9 (Commissioner); ECF No. 10 (Plaintiff's reply). For the reasons set forth below, Plaintiff's motion for summary judgment [ECF No. 5] is denied, and the Commissioner's motion for judgment on the pleadings [ECF No. 9] is granted.

## PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear

[1] The Court's Standing Order issued on November 18, 2020, directs that, "in opinions filed pursuant to . . . 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

directly on the resolution of the motions presently before the Court.

## I. Plaintiff's Application

Plaintiff filed her application for DIB on June 9, 2021. Administrative Record ("AR") at 233–239.[2] She initially alleged a disability onset date of October 1, 2019. AR at 236. She identified the following conditions that she claimed limited her ability to work: depression, anxiety, plantar fasciitis, hypothyroidism, arthritis, high blood pressure, high cholesterol, corroded arteries, pre-diabetes, and fibromyalgia. AR at 235. The Social Security Administration ("SSA") denied her DIB claim on January 3, 2022, and denied on reconsideration on May 16, 2022. AR at 76, 94.

## II. Plaintiff's Hearing Before the ALJ

After the Commissioner denied her application at the initial level and on reconsideration, Plaintiff appeared with counsel via telephone conference (due to COVID-19 restrictions) on March 8, 2023, for a hearing before an Administrative Law Judge ("ALJ"). AR at 47–75. Plaintiff and a vocational expert ("VE") testified. Plaintiff amended her disability onset date to January 16, 2021. AR at 54.

Plaintiff was 56 years old and graduated from high school. AR at 56. She previously worked as a bus driver and as a nursing home aide. AR at 57–59. She explained that she could no longer work because each step caused her pain in her left leg and back, and sitting caused her legs to go "painfully numb." AR at 60. She used a cane and her medications caused her to be dizzy, lightheaded, and tired. AR at 60.

[2] The page references from the transcripts are to the bates numbers inserted by the Commissioner, not the pagination assigned by the Court's CM/ECF electronic filing system.

Her depression and anxiety had lasted for 20 years, but she recently began new medications, which made her "nauseous and [made it] very hard to cope with everyday things." AR at 60. Her pain was in her leg, back, and feet, and caused her feet to "freeze up." AR at 61. She sweated a lot and occasionally fell due to lightheadedness. AR at 61–62, 64–65. She did not drive after taking her medications because they made her tired and lightheaded. AR at 61–62. Regarding her mental health, Plaintiff could "cry at the drop of a hat" and had brain fog. AR at 67.

Regarding her daily activities, Plaintiff said that she had to switch from standing to sitting to do her dishes. AR at 60. She moved out of her two-story house so she could have a one-story house with a walk-in shower. AR at 62. She estimated that she could lift 20 to 25 pounds and walk with 10 to 15 pounds. AR at 63. She enjoyed doing crafts, but her hands would cramp and get sore. AR at 63. She started to get numb after 10 minutes of walking and would have to "sit down every five to 10 minutes just to relax and move [her] leg around and be able to breathe and wipe the sweat from [her] face." AR at 64. Her knees were also painful. AR at 64. She could stand in one place for "five minutes and it start[ed] to hurt" but could stand 10 to 15 minutes "sometimes if [she was] lucky." AR at 65. She did her own laundry and dusting and cared for a bird. AR at 65. She took "frequent breaks" while doing housework. AR at 65. Her legs would go numb while sitting or driving. AR at 65–66. Elevating her feet helped. AR at 66. She enjoyed watching TV and reading, and occasionally gardened in a raised planter, as she could not "bend down to weed or plant anymore." AR at 66. She did her own finances. AR at 67.

VE Susan Godette testified that a hypothetical claimant, with an RFC identical to that which the ALJ ultimately found Plaintiff to have, would be capable of performing Plaintiff's past relevant work as a companion (nursing home aide). AR at 70–71.

**III. The ALJ's Decision**

On July 6, 2023, the ALJ issued a decision finding that Plaintiff was not disabled, and therefore did not qualify for DIB. AR at 13–25.

At the outset, the ALJ found that Plaintiff met the insured status requirements for DIB[3] through December 31, 2025, and had not engaged in substantial gainful activity since her amended alleged onset date. AR at 18. Then, at step two of the Commissioner's "five-step, sequential evaluation process,"[4] the ALJ determined that Plaintiff had the following severe impairments: fibromyalgia, osteoarthritis of the

[3] Claimants must meet the insured status requirements of the Social Security Act to be eligible for DIB. *See* 42 U.S.C. § 423(c); 20 C.F.R. § 404.130.

[4] In addition to the insured status requirements for DIB benefits, the Social Security Administration has outlined a "five-step, sequential evaluation process" that an ALJ must follow to determine whether a claimant has a "disability" under the law:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); citing, *inter alia*, 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)). The claimant bears the burden of proof for the first four steps of the process. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

knees, spine disorder, hip bursitis, and obesity. AR at 18. The ALJ further determined that Plaintiff had non-severe impairments of hypothyroid, depression, and anxiety. AR at 19.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR at 20.

Before proceeding to step four, the ALJ determined that Plaintiff had the residual functional capacity[5] ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except that Plaintiff could never climb ladders, ropes, or scaffolds, and could only occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. AR at 20–21.

At step four of the sequential evaluation, based on Plaintiff's work experience and RFC, as well as the testimony of the VE, the ALJ found that Plaintiff was capable of performing her past relevant work as a companion. AR at 24. Therefore, the ALJ found that Plaintiff was not disabled, and not entitled to DIB payments. AR at 25.

On April 19, 2024, the Appeals Council denied Plaintiff's request to review the ALJ's decision. AR at 1–7. The ALJ's decision thus became the "final decision" of the Commissioner. *See Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996) (citing 20 C.F.R. § 404.981) ("[I]f the Appeals Council denies review, the ALJ's decision becomes the [Commissioner]'s final decision.").

---

[5] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545.

## LEGAL STANDARD

Under 42 U.S.C. § 423(d), a claimant is disabled and entitled to DIB if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."

Where an individual's application for DIB has been denied, 42 U.S.C. § 405(g) defines the process and scope of judicial review of the Commissioner's final decision. The fourth sentence of § 405(g) authorizes the reviewing court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." The sixth sentence authorizes the reviewing court to "order additional evidence to be taken before the Commissioner . . . upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988) (discussing § 405(g)).

"The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the [Commissioner], and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted). Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is

disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, the reviewing court must first determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the correct legal standards are applied, the district court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

"Whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (noting that the phrase "substantial evidence" is a term of art used in reviewing administrative agency decisions to signify evidence that amounts to "more than a mere scintilla"). Thus, once an ALJ finds facts, a reviewing court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448. Yet, although "the evidentiary threshold for the substantial evidence standard is not high, . . . [it] is also not merely hortatory: [i]t requires relevant evidence which would lead a reasonable mind to concur in the ALJ's factual determinations." *Colgan v. Kijakazi*, 22 F.4th 353, 359 (2d Cir. 2022) (internal quotation marks omitted).

## DISCUSSION

In her motion for summary judgment, Plaintiff argues that the ALJ erred under 20 C.F.R. § 404.1520c(b) when evaluating the medical opinion evidence from her primary care physician, Alexander Selioutski, M.D., because the ALJ did not explain how he considered the supportability and consistency of the opinion. ECF No. 5-2 at 3–10.

The Commissioner maintains that the ALJ's decision is free from legal error and supported by substantial evidence. ECF No. 9-1

Dr. Selioutski opined that Plaintiff could stand or walk for zero to two hours in a workday and could sit for four hours during a workday. AR at 526. She could occasionally lift and carry less than 10 pounds, could rarely lift and carry 10 or 20 pounds, and could never lift and carry 50 pounds. AR at 526. She could rarely twist and climb stairs and never stoop or crouch/squat. AR at 526. Her pain was constantly severe enough to interfere with her attention and concentration at work. AR at 527. She needed a low-stress job and would be absent more than four days per month due to her impairments or treatments. AR at 527–528.

The ALJ rejected Dr. Selioutski's opinion, reasoning that the opinion:

> was submitted [on] a pre-preprinted [*sic*] form without a narrative explanation or reference to the objective medical record. Further, it is inconsistent with the claimant's routine and limited treatment and generally unremarkable physical and mental status exam findings and no significant findings on imaging. It is also inconsistent with the claimant's ability to do chores, read for pleasure and handle finances.

AR at 24.

Regulations effective for all claims filed after March 27, 2017 provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). *See also, e.g.*, *Spottswood v. Kijakazi*, No. 23-54-CV, 2024 WL 89635, at *3 (2d Cir. Jan. 9, 2024) (noting that under 20 C.F.R. § 404.1520c, the ALJ "owes no special deference to any particular medical opinion in the record"). Rather, the regulations direct that the ALJ

will evaluate the "persuasiveness" of all opinions and prior administrative medical findings in the record by assessing multiple factors, including supportability, consistency, the length and nature of the relationship of the source with the claimant, the source's specialization, and "other factors" that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c).

Of these factors, supportability and consistency are the most important. *See Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *1 (2d Cir. June 17, 2022) (discussing 20 C.F.R. § 404.1520c(b)(2)). Therefore, while the ALJ need not explain in his decision how he considered all of the factors, he must explain how he "considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings . . . . " 20 C.F.R. § 404.1520c(b)(2). Supportability refers to how "the objective medical evidence and supporting explanations presented by a medical source . . . support [the medical source's] opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(c)(1). Consistency refers to how similar "a medical opinion(s) or prior administrative medical finding(s) is with the evidence" in the record. 20 C.F.R. § 404.1520c(c)(2).

In conducting this evaluation, "[a]n ALJ is prohibited from 'playing doctor' in the sense that an ALJ may not substitute his own judgment for competent medical opinion . . . ." *Elizabeth P. v. Comm'r of Soc. Sec.*, No. 1:23-CV-00652 EAW, 2024 WL 2812434, at *7 (W.D.N.Y. June 3, 2024) (quoting *Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017)). Nevertheless, the regulations make clear that the ALJ—and not the claimant's medical sources—is

responsible for making the determination or decision about whether the claimant is disabled. 20 C.F.R. § 404.1520b(c)(3). Thus, it is up to the ALJ to weigh the conflicting evidence in the record. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).

*Supportability*

The Court finds Plaintiff's argument with respect to the ALJ's consideration of the supportability factor to be unpersuasive. Under the relevant regulations, the supportability factor requires the ALJ to evaluate the extent to which "the objective medical evidence and supporting explanations presented by a medical source . . . support his or her medical opinion(s)." 20 C.F.R. § 404.1520c(c)(1).

Here, the ALJ noted that Dr. Selioutski's opinion contained no narrative explanation and no reference to objective evidence. AR at 24. Indeed, Dr. Selioutski did not provide objective evidence, and his narration was limited to subjective complaints, including Plaintiff's complaints of pain, fatigue, and stiffness. *See* AR at 525; *See, e.g., Briana R. v. Comm'r of Soc. Sec.*, No. 23-CV-0410-LJV, 2025 WL 2653097, at *5 (W.D.N.Y. Sept. 16, 2025) (collecting cases in support of the proposition that "an ALJ does not err in discounting those parts of a medical opinion that appear to be based on little more than subjective complaints.").

Dr. Selioutski did refer to his own "[o]bservation" as the reason for one of his conclusions, AR at 527, and also wrote "see attached note" when asked to identify his clinical findings and objective signs. AR at 525. That note likely refers to the treatment notes from Plaintiff's visit and examination on the same day as the opinion, August 2, 2021. *See* AR at 486–489. Yet contrary to Plaintiff's argument (ECF No. 5-

2 at 7), Dr. Selioutski's treatment notes from that day, and from the other occasions he examined Plaintiff, do not support his opinion regarding the extent of her impairment.

Specifically, during Dr. Selioutski's examinations of Plaintiff during the relevant period, he observed multiple tender points, consistent with Plaintiff's diagnosis of fibromyalgia. AR at 472, 484, 488, 577, 581, 653, 657, 661, 871; *see also* 478 (consistent exam findings by a nurse practitioner in Dr. Selioutski's office). Dr. Selioutski did not, however, note any observations during his physical exams of Plaintiff regarding a limitation in walking, standing, sitting, or concentrating. He opined that Plaintiff could sit for zero to two hours and stand for four hours in a workday, yet during each of the nine physical examinations Dr. Selioutski personally conducted of Plaintiff, her motor activity was within normal limits and she did not appear to be in any distress. AR at 472, 484, 488, 577, 581, 653, 657, 661, 871. Treatment notes from others in Dr. Selioutski's office contained consistent findings on exam. *See* AR at 477, 642. During only one of the 12 visits Plaintiff had at Dr. Selioutski's office during the relevant period did a provider note that she walked with a limp and had a decreased range of motion due to pain. AR at 666. Dr. Selioutski himself never observed a limitation in gait during a physical examination, and while "the symptoms and signs of [fibromyalgia] may vary in severity over time and may even be absent on some days," SSR 12-2P, 2012 WL 3104869, *5 (2012), the weight of Dr. Selioutski's treatment notes did not support his limitation on standing. As Plaintiff's treating primary care physician, Dr. Selioutski "ha[d] access to

longitudinal information about [Plaintiff]," SSR 12-2P, 2012 WL 3104869, at *5, and the longitudinal treatment notes did not support his opinion.

Similarly, despite opining that Plaintiff was limited in how much weight she could lift and carry (AR at 526), Dr. Selioutski never observed weakness on physical examination, and treatment notes from his office note that Plaintiff had 5/5 strength, which was "[n]ormal and [s]ymmetric" on the two occasions strength was measured. *See* AR at 478, 642.

Finally, Dr. Selioutski opined that Plaintiff's concentration and attention would "constantly" interfere with her ability to work. AR at 527. While the treatment notes support Plaintiff's significant pain, the notes do not support that Plaintiff's impairments or accompanying pain affected her ability to concentrate. There were no notations that Plaintiff had difficulty concentrating while answering questions or during physical examinations, for example.

Plaintiff argues that the ALJ misunderstood the complex nature of fibromyalgia. ECF No. 5-2 at 4–6. The Court disagrees. The ALJ noted the objective findings of tender points on examination (*see, e.g.* AR at 22), which supported his determination that Plaintiff had a severe impairment of fibromyalgia. AR at 18. Plaintiff notes that other objective findings would be unlikely for fibromyalgia. ECF No. 5-2 at 5. While Plaintiff is correct regarding the finding that fibromyalgia is a severe impairment, the finding currently in dispute is her RFC as a result of her fibromyalgia and other impairments, and not the ALJ's step two findings. Treatment notes reflecting limitations in gait, overall demeanor, strength, and concentration

might support the type of restrictions contained in Dr. Selioutski's opinion. Dr. Selioutski made no such objective findings in his notes, however. Overall, the weight of Dr. Selioutski's treatment notes establish that while Plaintiff has a severe impairment of fibromyalgia, her impairment does not affect her sitting, standing, lifting, or concentration to the extent that Dr. Selioutski described in his opinion. *See, e.g., Sandra M. v. Comm'r of Soc. Sec.*, No. 3:22-CV-00485-TWD, 2023 WL 4972707, at *10 (N.D.N.Y. Aug. 3, 2023) ("It is well within the ALJ's discretion to reject a medical opinion when there is a lack of evidence supporting the limitations . . . ."); *Applewhite v. Colvin*, 54 F. Supp. 3d 945, 953 (N.D. Ill. 2014) ("where a physician's opinion is unsupported by her own treatment notes, that's a valid reason to discredit it").

*Consistency*

The Court finds that Plaintiff's argument with respect to the ALJ's consistency analysis is also unpersuasive. The ALJ reasoned that Dr. Selioutski's opinion was inconsistent with Plaintiff's routine, limited treatment, exam findings, imaging, and her ability to do activities of daily living. AR at 24.

As discussed, the treatment notes from Dr. Selioutski's office were not consistent with Dr. Selioutski's opinion. The opinion was also not consistent with the physical consultative examination conducted by Russell Lee, M.D. AR at 555–559. During that exam, Plaintiff was in no acute distress and her gait was normal; her gait was "the same with and without the cane" she used. AR at 557. Her stance was also normal, and her arm, leg, and grip strength was 5/5. AR at 557–558. She could

not walk on her heels but could walk on her toes. AR at 557. As such, Dr. Lee's examination was not consistent with the degree of limitations on walking, sitting, lifting, and concentrating found in Dr. Selioutski's opinion.

Similarly, Plaintiff's psychiatric consultative examination did not support the degree of limitation in concentration found in Dr. Selioutski's opinion. AR at 549–552. Dante Alexander, Psy.D. found no limitations in understanding, remembering, and sustaining concentration. AR at 551. On examination, Plaintiff's attention and concentration "were intact." AR at 550. While brain fog due to fibromyalgia might not show up on every examination, none of the treatment notes reflected a limitation in concentration, so there was no support for Dr. Selioutski's opinion that Plaintiff's concentration and attention would "constantly" interfere with her ability to work (AR at 527).

Plaintiff also completed 13 physical therapy sessions during the relevant period. AR at 804–828, 834–843, 848–857. The objective findings from physical therapy appointments are partially consistent with Dr. Selioutski's opinion because they reflect limitations in strength and standing, with Plaintiff experiencing discomfort, left leg and foot numbness, and fatigue during exercises, especially when standing. *See* AR at 807, 813, 816, 819, 822, 826, 835, 842, 852. Testing also revealed reduced leg strength. *See, e.g.*, AR at 806–807. Nevertheless, Plaintiff's functioning improved through the course of physical therapy, such that by the last two sessions, she reported that she had "improved function and quality of life" and was "able to perform more daily chores around the house." AR at 851, 854. At the end of the 13

sessions, her leg strength and overall function had improved, but she still experienced symptoms in her legs. AR at 856. Overall, while the physical therapy records support some limitations in standing and lifting, the RFC reflected such limitations by restricting Plaintiff to light work. *See* AR at 24. The physical therapy notes were not consistent with the degree of limitation found in Dr. Selioutski's opinion, however.

Moreover, the ALJ noted that Plaintiff's own reports that she could "socialize, clean, read and care for pets," including a bird and a puppy, and that she could "do chores, read for pleasure and handle finances" were inconsistent with the limitations in Dr. Selioutski's opinion. AR at 24. Indeed, Plaintiff testified that she could lift 20 to 25 pounds and walk with 10 to 15 pounds, AR at 63, consistent with an RFC for light work. 20 C.F.R. § 404.15679(b).

Additionally, as the ALJ reasoned, AR at 24, Plaintiff did not see a specialist in pain management or go to a rheumatologist to treat her fibromyalgia (other than two appointments in 2017, AR at 392–395) during the relevant period. Plaintiff's imaging was also inconsistent with the degree of limitation opined by Dr. Selioutski. While fibromyalgia would not have shown up on imaging, the ALJ also found "spine disorder" as a severe impairment. AR at 18. An MRI of Plaintiff's spine from 2017 showed disc bulging and mild to moderate canal and neural foraminal narrowing in her lumbar spine, but no herniations. AR at 386. Overall, while the evidence supported that Plaintiff has limitations, it did not support the degree of limitations in Dr. Selioutski's opinion.

Plaintiff objects to the ALJ's reliance on Plaintiff's activities of daily living

(ECF No. 5-2 at 8), but the Court notes that "the ALJ was entitled to consider Plaintiff's daily activities as part of the broader record of Plaintiff's functional limitations." *Briselida R. v. Comm'r of Soc. Sec.*, No. 522CV01290TJMML, 2023 WL 9600841, at *10 (N.D.N.Y. Nov. 20, 2023), *report and recommendation adopted sub nom. Briselida R. v. O'Malley*, No. 522CV1290FJSML, 2024 WL 532568 (N.D.N.Y. Feb. 8, 2024) (citing, *inter alia, Medina v. Comm'r of Soc. Sec.*, 831 F. App'x 35, 36 (2d Cir. 2020)). Indeed, SSR 12-2p requires as much, providing that where "the objective medical evidence does not substantiate" the claimant's statements about the limiting effects of her symptoms, the ALJ must "consider all of the evidence in the case record, including the [claimant]'s daily activities . . . ." SSR 12-2p, 2012 WL 3104869 at *5. Here, Plaintiff's statements regarding her limitations are not substantiated by objective medical evidence. Thus, Plaintiff's daily activities are permissible considerations under both SSR 12-2p and the regulations. *See, e.g.,* 20 C.F.R. § 404.1529(c)(3)(i) (identifying "daily activities" as factors relevant to the claimant's symptoms).

In sum, the ALJ adequately considered both the supportability and consistency factors as required by 20 C.F.R. § 404.1520c, and supported his considerations with substantial evidence. *See Teena H. o/b/o N.I.K. v. Comm'r of Soc. Sec.*, 521 F. Supp. 3d 287, 292 (W.D.N.Y. 2021) ("Absent a legal error, the Court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the Court might have ruled differently had it considered the matter in the first instance.") (internal citations omitted).

## CONCLUSION

For the foregoing reasons, Plaintiff Amy C.'s motion for summary judgment [ECF No. 5] is denied, and the Commissioner's motion for judgment on the pleadings [ECF No. 9] is granted. The Clerk of Court is directed to enter judgment on behalf of the Commissioner and close this case.

SO ORDERED.

DATED: September 17, 2026
Rochester, New York

HON. MEREDITH A. VACCA
United States District Judge